IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BRUCE HOPKINS,

    Plaintiff,

v.

OFFICER A. BONVICINO, et al.,

    Defendants.
                                        /

No. C 05-02932 JSW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

This matter comes before the Court upon consideration of the motion for summary judgment filed by Defendants Armand Bonvicino ("Bonvicino"), David Buelow ("Buelow"), Nick Nguyen ("Nguyen") (collectively the "Defendant Officers"), and the City of San Carlos ("City") (collectively "Defendants"). Having considered the parties' pleadings, relevant legal authority, and having had the benefit of oral argument, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendants' motion.

## BACKGROUND

On July 19, 2005, Hopkins filed his complaint alleging violations of 42 U.S.C. § 1983 against the Defendants. Hopkins claims that the Officer Defendants violated his constitutional rights: (1) to be free from unreasonable searches and seizures; (2) to be free from arrest without probable cause; and (3) to be free from the use of excessive force.[1] The City's liability for these

---

[1] Hopkins did not oppose the Defendants' motion on his claims that the Defendants allegedly violated his rights to be free from cruel and unusual punishment, to be free from interference with his zone of privacy, and to be free from inclusion in permanent government records branding an innocent citizen as a suspect of criminal activity. At the hearing he conceded that the Defendants are entitled to judgment on those aspects of his

actions is premised on *Monell v. Dep't of Social Sevcs.*, 436 U.S. 658 (1978). Hopkins' claims arise from an incident that occurred on August 22, 2003.

On that date, Hopkins stopped at the American Legion and had three to four sixteen-ounce beers. (Declaration of Todd Master ("Master Decl."), Ex. A (Deposition of Bruce Hopkins) at 58:21-60:2.)[2] Although Hopkins does not recall what time he left the American Legion, on the way home he was involved in a traffic accident and hit a car driven by a woman named Waheeda Talib. (*See, e.g., id.* at 65:10-22, 67:18-70:2.) After the accident, Ms. Talib followed Hopkins to his home. (*See, e.g., id.* at 69:19-70:2; Declaration of Nick Nguyen ("Nguyen Decl."), Ex. A.) When Hopkins arrived at his home, he discovered Ms. Talib had followed him. She accused him of drinking and hitting her car. Hopkins noted that she was on her cell phone and went inside his house. (Master Decl., Ex. A at 69:19-70:2, 73:22-76:8.) Once inside his house, Hopkins went to his furnished basement room and drank another four to five beers. (*Id.* at 84:21-25, 94:24-95:16.)

Ms. Talib apparently called the police, advised them that she had been involved in an accident and that she suspected the person who hit her had been drinking. Shortly thereafter, the Defendant Officers arrived at the scene. (Declaration of Carol Clark ("Clark Decl."), ¶ 4, Ex. A.) According to the police reports prepared at the time, Ms. Talib's suspicions were based on the fact that she smelled "the strong odor of an alcoholic beverage coming from his person." (*See* Declaration of Armand Bonvicino ("Bonvicino Decl."), Ex. A.)

Officer Bonvicino knocked on Hopkins' front door, but he received no response. (*Id.*) Officer Buelow arrived on the scene, and the Defendant Officers agreed that Officer Nguyen would remain with Ms. Talib while Officers Bonvicino and Buelow would continue to try and contact Hopkins. The latter two officers proceeded to the side of the house, knocked on a screen door, and announced their presence. After again receiving no response, they entered Hopkins' home by cutting a hole in the screen door and opening it. (*See, e.g.,* Bonvicino Decl., Ex. A;

---

Section 1983 claim. Accordingly, Defendants' motion is GRANTED as to those claims.

[2] Hereinafter, the Court shall refer to the excerpts of Mr. Hopkins deposition that have been submitted by Defendants as "Master Decl., Ex. A at page:line."

2

Clark Decl., Ex. A.) Hopkins attests that did not hear the Defendant Officers before they entered his home. (Master Decl., Ex. A at 96:14-16.) The Defendant Officers claim they entered the home because they were concerned that Ms. Talib may have mistaken the smell of alcohol on Hopkins' breath for a fruity odor associated with a diabetic coma. The Defendant Officers based this concern on their training, rather than on any further information they received from Ms. Talib. (Bonvicino Decl., ¶ 8, Buelow Decl., ¶ 6; Bonvicino Depo. 77:7-11, 113:8-114:24.)

Having received no response, Officers Buelow and Bonvicino entered the house with their guns drawn. (Bonvicino Depo. at 118:14-24, 138:11-22.) They eventually located Mr. Hopkins in his room. Hopkins testified that both officers pointed their guns at him. (Master Decl., Ex. A at 70:3-16, 93:23-94:1, 103:15-19.)

Bonvicino and Buelow placed Hopkins in handcuffs and took him outside. Ms. Talib then identified Hopkins as the driver of the vehicle that hit her vehicle. Hopkins was arrested for a violation of California Vehicle Code § 20002(a), upon Ms. Talib's decision to make a citizen's arrest. (Complaint, ¶¶ 9-13; Nguyen Decl., Ex. C.) Hopkins also was arrested for violation of California Vehicle Code § 23152, after Bonvicino conducted field sobriety tests and after his breath tests registered a blood alcohol content of .20 and .18. (Bonvicino Decl., ¶¶ 13, 15-17, Exs. A, B.)

## ANALYSIS

**A.     Legal Standards Applicable to Motions for Summary Judgment.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id*. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light

3

most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.   Legal Standards Applicable to the Defense of Qualified Immunity.**

The Defendant Officers assert that they are qualifiedly immune from suit on Hopkins' Section 1983 claims. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* As a result, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). In *Saucier*, the Supreme Court stated that a court called upon to rule on the issue of qualified immunity must ask the following threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *See id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). "If

4

no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*

However, if the Court finds that the facts would show the violation of a constitutional right, the next inquiry is to determine "whether the right was clearly established." *Id.* A constitutional right is clearly established for qualified immunity purposes if "the contours of the right [are] sufficiently clear that [at the time of the alleged unlawful action is taken] a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, an officer who makes a reasonable mistake as to what the law requires under a given set of circumstances is entitled to the immunity defense." *Boyd v. Benton Co.*, 374 F.3d 773, 781 (9th Cir. 2004) (citing *Saucier*, 533 U.S. at 205).

**C.  The Defendant Officers Not Entitled to Summary Judgment on Hopkins' Fourth Amendment Claims Relating to the Warrantless Entry and Subsequent Arrest.**

**1.  Unreasonable Search and Seizure.**

Hopkins claims the Defendant Officers violated his Fourth Amendment rights by entering when they entered his home without a warrant. The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. *Graham v. Connor*, 490 U.S. 386, 394 (1989). In addition, it is well established that "'searches and seizures inside a home without a warrant are presumptively unreasonable.'" *LaLonde v. County of Riverside*, 204 F.3d 947, 954 (9th Cir. 2000) (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980). Because it is undisputed that the Defendant Officers entered Hopkins' home without a warrant, unless a recognized exception to that requirement justifies their entry, Hopkins can establish the violation of a constitutional right.

The Defendant Officers rely primarily on the emergency exception to the warrant requirement to assert they were justified in entering Hopkins' home. *See Martin v. City of Oceanside*, 360 F.3d 1078, 1082 (9th Cir. 2004); *United States v. Cervantes*, 219 F.3d 882, 888

(9th Cir. 2000).³  As an alternative to the emergency exception, the Defendant Officers rely on the fact that a warrantless entry may be justified when "the officers have probable cause *and* are presented with exigent circumstances." *LaLonde,* 204 F.3d at 954 (citing *Payton*, 445 U.S. at 590); *see also United States v. Prescott*, 581 F.2d 1343, 1350 (9th Cir.1978) ("[A]bsent exigent circumstances, police who have probable cause to arrest a felony suspect must obtain a warrant before entering a dwelling to carry out the arrest.").

The Court finds there are disputed issues of material fact as to the state of the Defendants Officers' knowledge at the time they arrived on scene at Hopkins' home.  This precludes the Court from resolving the issue of whether they are entitled to qualified immunity on the basis that the warrantless entry was justified by the existence of probable cause and exigent circumstances.  The Court also concludes that even if it were to accept all of the facts as true, there are insufficient facts on this record for the Court to conclude that the Defendant Officers are entitled to qualified immunity on the basis of the emergency exception to the warrant requirement.  As such, the Defendants' motion is DENIED as to this claim.

**2.     No probable cause to arrest.**

Hopkins also contends he was arrested without probable cause in violation of the Fourth Amendment.  "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001) (citing *Larson v. Neimi*, 9 F.3d 1397, 1400 (9th Cir. 1993).  "In evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." *United States v. Mota,* 982 F.2d 1384, 1388 (9th Cir. 1993).  Under California law, probable cause to arrests exists when facts known to the arresting officer "would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and

---

³     In Cervantes, the Ninth Circuit set forth a three part test to determine whether the emergency exception applied.  The second prong of that test required a court to examine the subjective intent of the officer who effected the warrantless entry. *Cervantes*, 219 F.3d at 888, 890.  Well after Hopkins' arrest in this case, the United States Supreme Court in *Brigham City, Utah v. Stuart,* 126 S.Ct. 1943 (2006) effectively abrogated that portion of the *Cervantes* test and concluded that court's must focus on the objective circumstances known to the officers. *Brigham City*, 126 S.Ct. at 1948.

1  strong suspicion that the person is guilty of a crime." *People v. Adams*, 175 Cal. App. 3d 855, 861 (1985). The test under California law "is very similar to the Fourth Amendment test applied by [the Ninth Circuit], which provides that '[p]robable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime.'" *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003) (quoting *United States v. Buckner,* 179 F.3d 834, 837 (9th Cir. 1999)).

As the Court has noted above, there are disputed issues of material fact as to the state of the Defendants Officers' knowledge at the time they arrived on scene at Hopkins' home. Again, this precludes the Court from resolving the issue of whether they are entitled to entitled to qualified immunity on the basis that the warrantless entry was justified by the existence of probable cause. Because any other evidence supporting a probable cause determination was obtained only after what might possibly have been an illegal entry into Hopkins' home, the Court cannot determine at this time that the Defendant Officers are entitled to qualified immunity on Hopkins' Section 1983 claim for unlawful arrest, and the Defendants' motion is DENIED on this basis.

**D.    The Motion for Summary Judgment on the Excessive Force Claim is Denied as to Officers Buelow and Bonvicino.**

Hopkins' final claim against the Defendant Officers is that they used excessive force when they arrested him. However, Hopkins concedes that Officer Nguyen is not liable on this claim. Accordingly, the motion is GRANTED solely as to Officer Nguyen on the excessive force claim.

With respect to Officers Buelow and Bonvicino, it is clearly established that the use of excessive force by police officers in an arrest violates the arrestee's Fourth Amendment right to be free from unreasonable seizure. *White v. Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986). Hopkins bases his excessive force claim on the assertion that both Officers Bonvicino and Buelow pointed their weapons at Hopkins when they entered his room. (Master Decl., Ex. A at 70:3-16, 93:23-94:1, 103:15-19.) The Ninth Circuit has held that a claim for excessive force

7

based on the fact that a weapon was pointed at a suspect in the context of a seizure can give rise to a claim for excessive force.[4] *See, e.g., Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002). Whether an officer's conduct was reasonable is an objective one, however, asking "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court must consider whether the totality of the circumstances justifies the force used, examining particularly severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). "The 'reasonableness' of the particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. at 20-22).

As noted, Hopkins contends that both Officers Bonvicino and Buelow were pointing their weapons at him. (Master Decl., Ex. A at 70:3-16, 93:23-94:1, 103:15-19.) Officer Bonvicino testified that he did not have his weapon pointed at Hopkins but instead had it in the "low ready" position. Officer Bonvicino also testified that he did not point his weapon at Hopkins because he did not perceive a lethal danger from him and that it would not have been appropriate for him to have pointed a weapon at him. Officer Bonvicino also testified he did not know whether Officer Buelow pointed his weapon at Hopkins. (Bonvicino Depo. at 128:17-23, 143:2-144:14). The Court finds that there are disputed issues of fact as to whether Officer Bonvicino engaged in conduct that could support an excessive force claim, such that the Court cannot conclude that he is entitled to qualified immunity at this time.

In contrast, Officer Buelow acknowledges that he pointed his weapon at Hopkins. (Buelow Depo. at 78:16-19.) At that time, Hopkins was suspected of either leaving the scene of an accident, driving while intoxicated, or being in a diabetic coma. Although the Defendant Officers entered into the home without knowing if anyone else was present, they also testified

---

[4] The Defendant Officers have not suggested that Hopkins was not "seized" at the time.

8

that they received no response to their inquiries, and did not suggest that they heard any movement that could have suggested someone was present. When they encountered Hopkins, the facts suggested he was cooperative and did not attempt to flee from them or resist arrest. Viewing these facts in the light most favorable to Hopkins, the Court concludes that in opposing Defendants' motion, he has sufficiently alleged a violation of his right to be free from excessive force. The Court also concludes that given the holding in *Solano*, the law was clearly established at the time of Hopkins' arrest. Thus, based on the current state of the record, the Court cannot conclude at this time that, as a matter of law, Officer Buelow is entitled to qualified immunity.

For the above stated reasons, the motion is DENIED on the excessive force claim as to Officers Buelow and Bonvicino.

E.    **The City's Motion for Summary Judgment Must Be Denied.**

Hopkins contends that the City is liable under Section 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Municipalities are only liable for injuries that arise from an official policy or custom. *Id*. at 694. As the party with the burden of proof on this claim, Hopkins must show "(1) that he possessed a constitutional right of which he was deprived; (2) that the [City] had a policy; (3) that the policy 'amounts to deliberate indifference' to [Hopkin's] constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (quoting *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir.1992) (in turn quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). "There also must be a 'direct causal link' between the policy or custom and the injury," and Hopkins "must be able to demonstrate that the injury resulted from a 'permanent and well settled practice.'" (*Id.* (quoting *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (internal quotations omitted)). A municipality may not be held liable under Section 1983 where no injury or constitutional violation has occurred. *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001). The failure to train or supervise may give rise to a "policy or custom" sufficient to impose liability on the City. *City of Canton*, 489 U.S. at 389-90.

Because Hopkins' *Monell* claim is based in part on his allegations relating to the warrantless entry into his home, and because the Court cannot determine on the facts presented whether Hopkins was deprived of a constitutional right, the City's motion is DENIED on this aspect of Hopkins' section 1983 claim.

However, Hopkins also premises his *Monell* claim on his theory that the City failed to supervise Officer Buelow with respect to preparing reports on pointing firearms at suspects, and that Officer Buelow, in turn, trained his recruits to not follow the proper procedures. In opposing the City's motion, Hopkins submits a document entitled "Use of Deadly Force - Firearms, General Order 2.03," which provides:

> Sidearms shall remain holstered at all times. The drawing of any firearm shall take place only when an officer perceives a dangerous situation to exist, where self-protection or the protection of others is necessary. If an officer points his/her weapon at a person for the purpose of restricting that person's movements and no crime report is written, then the officer shall complete a memorandum, outlining the drawing and pointing of their weapon and forward it to the appropriate Division Commander, via their immediate supervisor. The officer shall complete and forward the memo prior to the end of their duty day.

(Boskovich Decl., Ex. F.) Officer Buelow admits that he did not prepare a report in accordance with this policy. Rather, he denies that this was a violation the policy and testified that it was a "common practice" for the officer preparing a report to include that information, and that he assumed that Officers Bonvicino or Nguyen would have included the information in their reports. (Buelow Depo., 76:9-80:24.)

The Court concludes that Hopkins has put forth sufficient evidence regarding his theory that the alleged failure to supervise Officer Buelow led to the alleged deprivation of a constitutional right. Accordingly, the City's motion on this aspect of Hopkins' section 1983 claim must also be DENIED.

**IT IS SO ORDERED.**

Dated: December 21, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE